**STATE ex SQUIRE, Supt. of Banks, Plaintiff, v. KNAPP, et al, Defendants.**

Common Pleas Court, Summit County.

No. 129818. Decided February 14, 1949.

Frank M. Enright, Akron, for plaintiff, Peter Thomas.
Edmund Burroughs and William Walker, Akron, for defendant, A. L. Honeywell.

## OPINION

**By WATTERS, J.**

This matter was tried to the court upon an agreed statement of facts by way of stipulation in the record between counsel for Mr. Thomas and counsel for Mr. Honeywell, which I produce here in full.

Some of it is argumentative, or states the claims of the parties. I have placed parentheses around that part.

### AGREED STATEMENT OF FACTS

"Mr. BURROUGHS: It is stipulated and agreed by and between the parties that the following are the facts of the matter to be presented to the Court:

Thomas P. and Augusta Knapp in 1919 executed a note in the face amount of Five Thousand Dollars, payable to the Peoples Savings and Trust Company, and this note was secured by a mortgage of that same date, that is, even date with the note, and that mortgage conveyed the premises which are described in the plaintiff's petition, and which are the subject of the action before this court now.

Later on the First Central Trust Company acquired all of the assets of the Peoples Savings and Trust Company, and of course among those assets the note and mortgage that we have already referred to.

Following the acquiring of this note and mortgage by the First Central Trust Company, the First Central Trust Company, as we all know, went into liquidation in 1939, and by virtue of that liquidation, all of the assets of the First Central Trust Company passed to the State Superintendent of Banks.

The note and mortgage was in default, and in September of 1939 the Superintendent, in consequence, filed this foreclosure action, and the petition in this case is the petition that was filed at that time by the Superintendent asking for a judgment on the note, which as I recall was a cognovit note, —the pleadings will show what the fact is—and for the foreclosure of the mortgage and the sale of the property.

That foreclosure case, your Honor, as the pleadings will show, never came to a decree. It simply remained upon the records, but you will find that a judgment was taken upon the note which was originally sued upon in the petition.

Thereafter the State Superintendent of Banks sold the judgment and assigned the mortgage that has been described to the court, to Peter Thomas, and as appears by the pleadings, Thomas was made a party plaintiff in this action in substitution for the Superintendent, and sought the foreclosure of this mortgage.

While this foreclosure suit was on the records, in 1927, the premises were delinquent for non payment of real estate taxes, and they remained delinquent until 1943, when the premises were certified by the Auditor as delinquent.

In 1946 the premises were omitted, by action of the County Board of Revision, from foreclosure proceedings for delinquent taxes under the procedure that I think is familiar to the court, as prescribed by law, and on March 4, 1947, they were forfeited to the State of Ohio by action of the Common Pleas Court.

On June 17, 1947, the premises were offered for sale and were sold by the County Auditor for the sum of Twenty-Five Hundred Dollars, and they were bought in at that sale by the defendant, A. L. Honeywell, whom we represent in this action.

Mr. Honeywell paid the sum of Twenty-Five Hundred Dollars to the Auditor, received his certificate from the Auditor in accordance with the Statute, later paid the requisite charge for the preparation of the deed, and the Auditor's deed for the property was duly executed to him, and the original of the Auditor's deed in question is marked Defendant Honeywell's Exhibit A and made a part of the record.

MR. ENRIGHT: No objection.

THE COURT: It may be admitted.

MR. BURROUGHS: This deed was, as shown from the deed itself, dated July 8th, 1947, and was duly filed for record immediately thereafter by the defendant Honeywell, on July 9, 1947, received by the Recorder at 1:51 o'clock P. M. on that day, and was duly recorded July 14, 1947, Summit County Records of Deeds, Volume 2388, pages 381 and 382 of Summit County Records.

It is further stipulated by and between the parties that after the recording of the deed marked Defendant Honeywell's Exhibit A, the defendant Honeywell paid taxes and assessments upon the real estate described in his deed in the sum of $300.27, on October 23, 1948, and that Defendant Honeywell's Exhibit B is the paid tax bill for such payment of taxes and assessments upon the real estate, and is made a part of the record. The bill shows that there was a delinquent special for the first half of 1947 taxes and a delinquent general tax. The delinquent special was $124.34, including the penalty, and the delinquent general tax was $32.94, and for the last half of the year 1947, the second half, the amount of the special, without penalty, was $113.04, and the amount of the current taxes was $29.95, and the defendant Honeywell, on October 23, 1948, paid for both the first and the last half of 1947 taxes which included the penalty on the first half which was delinquent.

MR. ENRIGHT: No objection to the tax bill.

THE COURT: It may be admitted. Now is there any question but what your stipulation so far is correct?

MR. ENRIGHT: No, there is no argument about it. It is all a matter of record.

THE COURT: Do you have anything you want to add to the stipulation?

MR. ENRIGHT: Oh yes. The things I would like to submit to supplement Mr. Burroughs' statement would be about as follows: Peter Thomas acquired this judgment and security for the judgment from the Superintendent of Banks. He recorded his assignment, and he is a substitute party plaintiff. A judgment was rendered on the note and on the pending foreclosure. As a matter of fact it is still pending and exists on the two causes of action.

On October 3, 1941, prior to Peter Thomas becoming a substitute party plaintiff, the Superintendent of Banks took a certificate of judgment in this case, and thereafter, on March 19, 1942, Peter Thomas acquired this judgment. On February 26, 1946, he filed, with leave of court, a supplemental petition. He made Charles W. Frank, Treasurer of Summit County, a defendant. He made C. L. Bower, Auditor of Summit County, a defendant, and he likewise made the City of Akron a defendant. Process was served on all of these public authorities, and in March of 1946, March 14, 1946, for and on behalf of Charles W. Frank, County Treasurer, the County Prosecutor filed an answer in this case, and he set up what purported to be the tax claim against these premises. The City of Akron never at any time filed an answer setting forth its special assessment lien against these premises.

Bear in mind,—and I'm sure the Court is familiar with the fact, that all of Exchange Street was subject to a very high special assessment, and our Court of Appeals reviewed it and abated quite a bit of it.

As a part of this supplemental petition, the plaintiff, Peter Thomas, questioned the special assessment lien of the City of Akron.

This all occurred in 1946, and in 1947, while he was a party to this lawsuit, the County Auditor proceeded to forfeit this land. Understand, the Treasurer had set up the public claim, the claim of the general tax and the claim of the special assessment of the City of Akron.

MR. BURROUGHS: You are referring to the pleadings filed in this case, and you would say he has set it up as shown by the pleadings.

MR. ENRIGHT: That's right.

MR. BURROUGHS: You claim no further setting up?

MR. ENRIGHT: That's right.

MR. BURROUGHS: I might make this further stipulation: It is stipulated and agreed by and between the parties that prior to the forfeiture of title and the sale as a forfeited land title of the land herein described, the plaintiff Thomas and his attorney, Mr. Enright, negotiated with the City of Akron in regard to past due assessments upon the property. (I will stop there, but I will reserve the right, over objection, to produce evidence, through Nate Koplin, that the parties negotiated to the extent that offers and counter offers were made for the settlement of this assessment, and finally the parties refused the final offer made by the City and took no further steps. I think the record should show that Mr. Enright objected to the statement of fact with reference to negotiations with the City in the matter of delinquent assessments, and moved that it be stricken from the record.)

MR. ENRIGHT: That will take care of it. (The only other fact I want to call the Court's attention to is the fact that all of these forfeiture proceedings occurred in 1947, and as far as I can dope it out, everybody was in this lawsuit in 1946.) It becomes strictly a matter of whether the doctrine of lis pendens prevailed or whether this new type of land forfeiture for non payment of taxes supersedes it. To me that's the essence of the lawsuit.

MR. BURROUGHS: (I think that is precisely true, and we are now proceeding from the question of the statement of the facts to the court to the matter of argument, and all I want to say is that we definitely feel that the law of Ohio is that on a foreclosure tax sale an entirely new title is made; that the statute is to that effect, and that the Supreme Court decisions are to that effect, and we have here a brief for the court which I would like to file and give a copy to Mr. Enright.)

THE COURT: Is it your thought now that everything that the court needs has been stipulated?

MR. ENRIGHT: The only possibility of supplementing the statement of fact, as Mr. Burroughs has said, would be the question of whether or not the bid of Mr. Honeywell has gone into the general fund or whether it is in escrow down there. Whatever Mr. Bower says will determine that fact.

THE COURT: Is there any question but that the proceedings had in the delinquent tax matter were regular except as to the claim of lis pendens?

MR. ENRIGHT: I feel that the Auditor followed the statute.

462

THE COURT: As far as the sale is concerned, had this case we have before us now not been filed, you would have no standing?

MR. ENRIGHT: I will go a little farther, and say that this occurred at the same time the Courtney case occurred, and I read your opinion, and I'm willing to stand on the procedure in the Courtney case as having applied to this case.

MR. BURROUGHS: I might make a suggestion. Even if Mr. Enright was of the opinion that the proceedings were not in every way regular, our cross petition in which we recite our tax title, has been filed for more than a year, and he has in no way attacked the tax title, and under the statute there is a period of limitation of one year within which the party must attack, and the right to attack would be barred. I want to call that to the court's attention. In the first place Mr. Enright concedes that the procedure is the same as the Courtney case, and raises no objection to it. In the second place, under the state of the pleadings he could not attack the proceedings, and the presumption of regularity would stand."

\* \* \* \* \* \* \* \*

The present foreclosure action in which the question before us arises, was filed by the Superintendent of Banks in 1939. In 1941 Peter Thomas (or early in 1942) acquired the interest of the Superintendent of Banks in the note and judgment and mortgage, by assignment. On February 26, 1946, Thomas filed his supplemental petition making the County Treasurer and County Auditor parties defendant. On March 14, 1946, the Treasurer answered, setting up the taxes due, and so forth.

On October 18, 1946, the premises in question were omitted by the Board of Review from foreclosure proceedings.

On November 29, 1946, the forfeiture case (No. 159,430) was filed, and publication duly had December 16 and 23, 1946.

The forfeiture decree was entered on February 20, 1947.

On June 17, 1947, the premises were sold under said forfeiture decree to Mr. Honeywell, for $2500.00. The Auditor's deed was dated July 8, 1947.

I have brought these important dates together chronologically for the convenience of ready reference.

It will be noted that Peter Thomas did not in any way intervene in the forfeiture case. It is admitted that all proceedings in said suit (No. 159,430) were regular, and if they were not, the time for attack has long since passed.

The position of Mr. Thomas is that he did not need to intervene in the forfeiture case, as the Teasurer, etc. were already parties to his (this) action which was lis pendens

when the forfeiture case was commenced. As his counsel Mr. Enright stated: "It becomes strictly a matter of whether the doctrine of lis pendens prevailed or whether this new type of land forfeiture for non payment of taxes supercedes it."

\* \* \* \* \* \* \* \*

## STATEMENT OF THE LEGAL PRINCIPLES INVOLVED.

By reason of the auditor's deed to Mr. Honeywell, backed up by the various regular proceedings leading up to the forfeiture case and sale, he is vested with a new and perfect title free and clear of all encumbrances whatsoever, including the mortgage assigned to Mr. Thomas by the Superintendent of Banks.

Sec. 5762 GC, provides as follows:

"When a tract of land has been duly forfeited to the state and sold agreeably to the provisions of this chapter, the conveyance of such real estate by the county auditor shall extinguish all previous title thereto and .invest the purchaser with a new and perfect title, free from all liens and encumbrances except taxes and installments of special assessments and reassessments not due at the time of such sale, and except such easements and covenants running with the land as were created prior to the time the taxes and assessments for the nonpayment of which the land was forfeited became due and payable."

This section has long been in effect, and has been applied and sustained in numerous cases.

**Kahle v. Nisley, 74 Oh St 328; Cech v. Schultz, 132 Oh St 353; Dubin v. Green Wood, 139 Oh St 546; State ex rel City of South Euclid v. Zangerle, 145 Oh St 433.**

As to the doctrine of lis pendens, the Supreme Court in **Security Trust Company v. Root, 72 Oh St, 535,** held it inapplicable to sales of land for taxes. In that case the court held:

"The taxes were a lien paramount to all other liens and claims when the **foreclosure case** was commenced, and the taxes were then delinquent as shown by the treasurer's duplicate, and **before decree** the auditor's duplicate gave constructive notice that the defendant had purchased and had acquired a tax certificate. It was the duty of the plaintiff to take notice of these tax proceedings and govern itself accordingly. Not having done so it must like other negligent parties, abide the result." (Emphasis by this court.)

So in the instant case, the right of the officials to invoke forfeiture, and to proceed to sell the land for delinquent taxes was wholly unaffected by the pending action of Mr. Thomas for foreclosure. The doctrine of lis pendens does not apply against the tax forfeiture action.

It is admitted that the forfeiture action proceedings were regular. Mr. Thomas could have intervened therein and raised the questiion of the amount of assessments, etc. However he did not, and he cannot here collaterally attack said proceedings.

Judgment is accordingly rendered for Mr. Honeywell. Exceptions to Mr. Thomas.